# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 13-956V
### (To be Published)

* * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| LEILAH AL-UFFI, *on behalf of her minor child*, R.B., | * |
| | * |
| | *   Special Master Corcoran |
| Petitioner, | * |
| | *   Dated: September 30, 2015 |
| v. | * |
| | *   Attorney's Fees and Costs; |
| | *   Reasonable Basis; Interim Fees; |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | *   Expert Costs |
| | * |
| Respondent. | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * *

*Andrew Donald Downing*, Van Cott & Talamante, PLC, Phoenix, AZ, for Petitioner.

*Debra A. Begley*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### **INTERIM ATTORNEY'S FEES AND COSTS DECISION**[1]

On December 5, 2013, Leilah Al-Uffi filed a petition on behalf of her minor child, R.B., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Having filed numerous medical records, along with three reports from two experts, Petitioner has now requested an interim award of attorney's fees and costs in the amount of $48,898.50. Respondent objects that an interim fees award is not warranted at this juncture because Petitioner has not made the requisite special showing. In the alternative, should I determine that

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (Dec. 17, 2002) (current version at 44 U.S.C. § 3501 (2014)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

an interim fees award is appropriate, Respondent argues that 1) the hourly rate requested for Petitioner's primary counsel, Andrew Downing, is not reasonable; 2) some of the time billed was duplicative; and 3) the retained experts in this case have charged an excessive hourly rate. As discussed below, I hereby **GRANT IN PART** Petitioner's Motion, awarding at this time interim fees and costs of **$38,073.20**, while deferring action on any expert-related costs.

## Factual History

At the age of twelve, R.B. received her third dose of Gardasil,[3] the human papilloma virus vaccine, on December 8, 2010, at the University of Oklahoma, Tulsa Pediatric Clinic. Pet. at 1, filed Dec. 5, 2013 (ECF No.1) [hereinafter "Pet."]; Pet'r's Ex. 6 at 37. Prior to that date, R.B. appears to have been developing normally, and there are no noted neurological concerns about her contained in the filed medical records. Pet. at 1. Approximately two days after receipt of the final Gardasil dose, R.B. became confused, and by the third day began speaking in a slurred and unfamiliar manner. *Id*. R.B. thereafter become so agitated and disoriented that Ms. Al-Uffi (R.B.'s mother) took her to a local hospital's emergency room on December 13, 2010. Pet'r's Ex. 1 at 1-2; Pet'r's Ex. 6 at 38. At this time, petechiae were observed on the soles of R.B.'s feet in a bilateral pattern and she engaged in spells of lip-smacking, swallowing, and chewing. Her initial treaters diagnosed her with acute encephalopathy. Pet'r's Ex. 4 at 22.

A few weeks later, R.B. was admitted to Cook Children's Medical Center on January 5, 2011, after she exhibited further abnormal movements and agitated, aggressive behavior. Pet'r's Ex. 2 at 4-5; Pet'r's Ex. 6 at 38, 42. Testing revealed right-sided temporal lobe abnormalities in R.B.'s brain, and she was incontinent, and at times catatonic. Pet. at 2. R.B. was ultimately diagnosed with an anti-NMDA receptor encephalitis (an autoimmune reaction against NMDA-receptor subunits) after she tested positive for NMDA-receptor antibodies. Pet'r's Ex. 2 at 12. She continues to suffer from the residual effects of the encephalitis. Pet. at 2. Petitioner alleges that R.B.'s receipt of the third dose of the Gardasil vaccine caused her autoimmune encephalitis. *Id*. at 1.

## Procedural History

Ms. Al-Uffi filed this action on December 5, 2013. She thereafter began the process of gathering and filing relevant medical records, proposing a deadline of March 31, 2014, for filing a statement of completion of the record, to which Respondent agreed (although that deadline was not formally ordered). Status Report, filed Feb. 28, 2014 (ECF No. 11).

Petitioner subsequently failed to file a Statement of Completion by the date she had proposed, and also failed to file a status report regarding her progress in collecting documents.

---

[3] Gardasil is the trademark name for a preparation of human papillomavirus quadrivalent recombinant vaccine. *Dorland's Illustrated Medical Dictionary* 761 (32d ed. 2012).

Eventually, enough time passed without action on Petitioner's behalf that I issued an Order to Show Cause on June 13, 2014 (ECF No. 15), demanding that Ms. Al-Uffi act or risk dismissal of the petition. In a response filed that same day (ECF No. 16), Petitioner explained that she had faced problems in collecting the relevant records, but pledged to complete the task. Ms. Al-Uffi eventually filed her Statement of Completion on July 30, 2014. ECF No. 19.

Since the completion of records filing, the case has proceeded swiftly. I initially set a deadline of September 29, 2014, for Respondent's Rule 4 Report. June 13, 2014 Order. Before that deadline had been reached, however, Petitioner went ahead and filed an expert report and supporting literature from Dr. David Axelrod on August 27, 2014. ECF No. 21. A status conference was then held on September 24, 2014, during which Respondent requested a further extension of time for the filing of her Rule 4 Report, in order to incorporate in her response the contents of an additional expert report from one of R.B.'s treating physicians, Dr. David Siegler, that Petitioner indicated she would be filing (and did so thereafter on Oct. 10, 2014 (ECF No. 23)). On December 12, 2014, Respondent filed her Rule 4 Report along with a responsive expert report from Dr. Mark Gorman. ECF Nos. 24, 25, 26. The Report identified missing medical records, which Petitioner filed on January 8, 2015. ECF No. 28.

Petitioner subsequently filed a supplemental expert report from Dr. David Axelrod on February 3, 2015. ECF Nos. 32, 33. A Joint Status Report filed March 12, 2015, indicated that the parties believed there were outstanding records still not filed. ECF No. 34. Petitioner therefore filed a motion requesting authorization for service of a subpoena on the entities in possession of such records (ECF No. 35), and I granted the request. ECF No. 36. Those subpoenaed materials have since been filed. During a status conference on August 5, 2015, I set a deadline for Respondent's supplemental expert report of September 18, 2015, with which Respondent complied. The case is not yet scheduled for hearing.

In the midst of performing the above-referenced litigation activities, Petitioner filed a Motion for Interim Attorney's Fees and Costs on June 23, 2015 (hereinafter "Mot."). Petitioner argues that she has acted in good faith and has established a reasonable basis for her claim, and thus fees are generally appropriate. Mot. at 9. She also asserts that her case meets all three criteria set by the Federal Circuit in *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008) for an interim fees award, because (i) the case is protracted; (ii) the case involves costly expert testimony; and (iii) the case involves undue hardship. *Id*. at 10-17. Petitioner further maintains that Mr. Downing's hourly rate is reasonable, as are Petitioner's experts' fees. *Id*. at 17-33.

Ms. Al-Uffi requests compensation for Mr. Downing at a rate of $350/hour for the 87.70 hours he has expended in this case thus far, for a total of $30,695.00. In addition, she asks that an associate attorney working on this case, Justin Redman, be awarded fees in the amount of

$195/hour for the 24.30 hours expended in this case thus far, for a total of $4,738.50, and also seeks to recover costs for work performed by two legal assistants (Robert Cain and Danielle Avery) billing at $100/hour, for a joint total of $2,250. Petitioner also asks for reimbursement of funds paid to Drs. Axelrod and Siegler for their initial work on the case, including the preparation of filed expert reports, in the total sum of $10,075 based on hourly rates of $500 and $450, respectively.

Appended to Ms. Al-Uffi's Motion are several attachments offered as support for her interim fees award motion. Mr. Downing's billing records from both his former and present law firms (Hennelly & Steadman and Van Cott & Talamante, respectively) are included with the Motion, along with receipts establishing litigation costs (such as checks made out to facilities for obtaining copies of the medical records, and amounts paid to the Petitioner's experts). Also filed with the motion are declarations from Mr. Downing, Joyce Van Cott (a named partner at Mr. Downing's current firm), and Bradley S. Shelts (another lawyer licensed and practicing in Arizona), all of which appear intended to support the reasonability of Mr. Downing's requested hourly rate of $350. Statements from Jordan and Justin Redman[4], Bob Cain, and Danielle Avery are similarly included. Petitioner also has filed copies of several Arizona state court cases addressing reasonable hourly rates for that forum.

Respondent filed her opposition to the Motion on July 1, 2015 (hereinafter "Opp."). She maintains that the express language of Section 15(e)(1) of the Vaccine Act does not confer authority on special masters to award interim fees. Opp. at 4. She then argues that even if interim fees awards are permitted, such an award is inappropriate in the present case because Petitioner has not met the "necessary" *Avera* criteria. *Id*. at 5-6, 8. Respondent does not, however, presently contest Petitioner's good faith in filing the claim, or the claim's reasonable basis (while reserving the right to challenge reasonable basis at a later time). *Id*. at 8.

Respondent further argues that, to the extent I grant an interim award, the $350 hourly rate requested for Mr. Downing is unreasonably high, and should be no more than $296 an hour for work performed this year, discounted downward for prior years to take into account inflation.[5] *Id*. at 16-18. Regarding the total hours claimed by Mr. Downing, Respondent says that "his work should exhibit more efficiency" (*id*. at 19), and that Mr. Redman's work was frequently duplicative of Mr. Downing's. Finally, Respondent contends that the rates charged by Petitioner's experts are unreasonable. *Id*. at 20-22.

---

[4] The Redmans are not only co-workers at Mr. Downing's firm but identical twins as well, although only Justin Redman has worked on this matter. Mot. at 21.

[5] Respondent has not asserted any objection to the rates requested for the services of Mr. Redman or the paralegals who have provided services on this matter. Opp. at 13-14, n. 11. As such issues are conceded by Respondent, and because I have independently concluded that these rates are acceptable, I will not be addressing them herein.

Respondent also submitted eight exhibits with her Opposition: (i) a copy of my unpublished decision in *Lamare v. Sec'y of Health & Human Servs.* No. 12-312, filed Feb. 27, 2015, denying interim attorney's fees and costs; (ii) a snapshot of Van Cott & Talamante's website page identifying Andrew Downing as an attorney (as opposed to a member or of counsel); (iii) a snapshot of Van Cott & Talamante's website page exhibiting Mr. Downing's biography; (iv) an CM/ECF listing of the 105 Vaccine Program cases in which Mr. Downing is or was counsel; (v) the Real Rate Report 2014; (vi) the 2013 Economics of Law Practice in Arizona published by the State Bar of Arizona; (vii) a snapshot of Dr. Axelrod's website; and (viii) another snapshot of Dr. Axelrod's website. Exs. 1-8 (ECF No. 45).

Petitioner replied to Respondent's Opposition on July 7, 2015 (hereinafter "Reply"). In it, Ms. Al-Uffi reiterates her earlier argument that the decisions of the Federal Circuit do permit the recovery of interim fees and costs. Reply at 3-8. With respect to challenges to Mr. Downing's hourly rate, Petitioner questions whether Respondent's reliance on the 2014 Real Rate Report and the 2013 Economics of Law survey supports the lower hourly rate she urges. *Id*. at 8-14. Petitioner also objects to Respondent's blanket efficiency objections, noting that Respondent fails to point to any specific examples in the record of inefficiency. *Id*. at 14. Finally, Petitioner addresses Respondent's claim that Petitioner's experts' fees are not reasonable, by reiterating that these experts are entitled to the prevailing market rate for the work performed, and that the rates they are charging are in fact reasonable. *Id*. at 15-18.

After initially reviewing these filings, I asked Ms. Al-Uffi on August 12, 2015, to provide additional evidence for her assertion that Petitioner's counsel has not raised his billing rates in the past few years. To that end, Petitioner submitted a supplemental filing that indicates Mr. Downing had entered retainer agreements with his clients at the rate of $350.00/ hour as early as September 2013, and also that he has been repeatedly compensated in the Vaccine Program on the basis of such rate. ECF No. 48. Respondent filed a Response to the Supplemental Brief on August 18, 2015 arguing that such evidence should be disregarded. ECF No. 49. Respondent in particular noted that in all of the cases cited by Petitioner, the awarded hourly rate was the product of a settlement, and was therefore not evidence of a concession that $350 per hour was reasonable. Petitioner immediately filed a Reply acknowledging that Respondent has in fact not conceded the validity of the rate requested in this case, and is not bound to accept those rates in this instance, but that Petitioner had merely provided the information in response to my inquiry. Reply to Response to Supplemental Brief at 1-2, filed Aug. 18, 2015 (ECF No. 50). This matter is now ripe for resolution.

**Billing Evidence**

The contents of the billing records submitted by Petitioner in support of the present interim fees request shed light on counsel's activities since the filing of the petition. Mr. Downing first

learned of this case and agreed to represent Ms. Al-Uffi in August of 2013 – approximately four months before it was filed on December 5, 2013. Mot. at 65. In the interim period, he researched scientific journal articles on demyelination of the central nervous system following Gardasil vaccination, analyzed medical records, and spoke with both R.B.'s treating neurologist and Ms. Al-Uffi. *Id*. As a result, Petitioner's counsel expended approximately twenty-three hours in preparation of filing the petition. *Id*. at 65-67.

After filing, the billing records indicate that counsel's focus shifted to the submission of R.B.'s medical records. On February 7, 2014, there was a conference call with the client, and Petitioner's counsel noted in his time entry for that date "still missing certain records." Mot. at 68. Shortly thereafter, however, there are many fewer hours billed towards R.B.'s case, particularly in April (.8 hours), May (.2 hours), and June (.4 hours). *Id*. This lull in activity occurred around the time of my order admonishing Petitioner for failing to meet deadlines, and my subsequent Order to Show Cause. It is not clear from the record why there was so little movement on the case at this time (and certainly counsel might have acted more expeditiously during this period in attempting to gather relevant documents), but Petitioner requests compensation for relatively few hours in this time period (and as already noted, the case's progress subsequently sped up).

After Mr. Downing switched firms, activity on the case resumed, as reflected in the procedural history. Status conferences were held, and there was correspondence with Respondent's counsel on the possibility of settlement. Mot. at 36. Mr. Downing also spent a significant amount of time at the end of 2014 corresponding with the two experts retained in this case. Work on the matter thereafter appears to have been steady, and the time billed to it is consistent with the procedural history from this point forward.

It was in October of 2014 that Mr. Redman began working on Petitioner's case. *Id*. at 43. He billed 2.5 hours ($487.50) on October 21, 2014, to analyze the Petitioner's medical records and other information "for background." *Id*. On December 16, 2014, Mr. Redman thereafter reviewed Respondent's Rule 4 Report and expert report and drafted an internal memorandum, expending 5.6 hours on this task ($1,092.00). *Id*. He continued to work sporadically on the case until January 12, 2015, when he reviewed R.B.'s medical records to determine whether Petitioner could file a supplemental Statement of Completion given the new medical records filed, billing 3.9 hours ($760.50). *Id*. at 44; ECF Nos. 27, 28. On February 9, 2015, both of Petitioner's attorneys spent time analyzing Dr. Axelrod's report. Mot. at 40. Finally, on March 12, 2015, Mr. Redman expended 1.2 hours ($234.00) examining the case and drafting "shell of Motion for Authorization to Issue Subpoenas. *Id*. at 45. After it was granted, Mr. Downing billed 1.1 hours to the actual drafting of subpoenas and correspondence with process server in Tulsa on March 13, 2015. *Id*. at 41.

## ANALYSIS

I. **Legal Standard Applicable to Interim Award Applications.**

Controlling decisions of the Federal Circuit[6] permit the recovery of interim fees and costs in Vaccine Program cases. *Cloer v. Sec'y of Health and Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012); *Avera*, 515 F.3d at 1352. Indeed, as noted in *McKellar v. Sec'y of Health and Human Servs.*, 101 Fed. Cl. 297, 302 (2011), "interim fees are permitted even before an entitlement decision is made."

In determining that interim fees awards should be available in Vaccine Program cases, the Federal Circuit followed the Supreme Court's construction of other fee-shifting statutes. *Avera*, 515 F.3d at 1351-52. Indeed, *Avera* ultimately determined that the justification for an award of interim fees was *greater* in Vaccine Program cases, because the Vaccine Act does not have a "prevailing party" requirement (and thus petitioners may request, and obtain, fees awards even where they are unsuccessful in establishing entitlement to a damages award). *Id.* at 1352; *see also* H.R. Rep. No. 99-908 at 22 (1986). The underlying remedial purposes of the Vaccine Act are better served if petitioners have access to competent legal representation – a goal that is aided if attorneys appearing for Vaccine Program petitioners have assurances that their fees will be satisfied. *Id.*

*Avera*, however, did not define precisely the circumstances in which an interim award might appropriately be issued – leading other special masters to observe that the standards for granting an interim fees award "remain somewhat muddled." *Small v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2014 WL 308297, at *1 (Fed. Cl. Spec. Mstr. Jan. 7, 2014) (citing *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010)). Thus, although the Federal Circuit has identified certain conditions under which an interim fees award may be appropriate, such as "where proceedings are protracted and costly experts must be retained," (*Avera* at 1352), *Avera* has been interpreted as allowing special masters broad discretion in determining whether to award interim fees. *See, e.g.*, *Kirk v. Sec'y of Health & Human Servs.*, No. 08-241V, 2009 WL 775396, at *1 (Fed. Cl. Spec. Mstr. Mar. 13, 2009) (reading *Avera* to set a "broad, discretionary vehicle for ensuring that petitioners are not punished financially while pursuing their vaccine claim"); *Bear v. Sec'y of Health & Human Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (*Avera* provides only "*examples* and *general guidance* concerning when interim fees and costs might be awarded, leaving the special masters broad **discretion** to consider many factors in considering whether an interim award is appropriate in a particular case") (emphasis in original).

---

[6] In this decision, I reference or rely upon both the decisions of special masters as well as the judges of the Court of Federal Claims, all of which constitute persuasive, but not binding authority. *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). Federal Circuit decisions, however, are binding on special masters. *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 Fed. App'x 712 (Fed. Cir. 2004).

Since *Avera*, there has been a considerable amount of case law discussing when to award interim fees. In some instances, interim awards have been granted in light of the amount of time that has passed in the case, as well as the amount of work performed. *See, e.g.*, *MacNeir v. Sec'y of Health & Human Servs.*, No. 03-1914V, 2010 WL 891145, at *1-4 (Fed. Cl. Spec. Mstr. Feb. 12, 2010) (granting an interim award of fees and costs of $12,062 primarily arising from counsel's efforts at obtaining and filing medical records); *Franklin v. Sec'y of Health & Human Servs.*, No. 99-0855V, 2009 WL 2524492, at *4 (Fed. Cl. Spec. Mstr. July 28, 2009) (awarding interim fees where the petition had been pending for years, petitioner's counsel had paid significant amounts to experts, and the final resolution of the case was likely to take some time). But there is no defined period of time that must have passed from the date of a petition's filing to justify an interim fees award. *See, e.g.*, *Bear*, 2013 WL 691963, at *4-5 (interim fees award allowed when petition had been pending for only nineteen months); *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *2-3 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (interim fees award granted with respect to case pending for less than one year).

The awarding of interim fees must also be based on the more general factors that special masters consider, in their discretion to award reasonable fees and costs to unsuccessful petitioners (given that an interim request, being made in a case that has yet to be adjudicated, is literally made in the context of an "unsuccessful" petition). Thus, a special master asked to make an interim award must consider if (a) the petition was brought in good faith[7]; and (b) there was a reasonable basis[8] for the claim for which the petition was brought. Section 15(e)(1); *Silva v. Sec'y of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012); *McKellar*, 101 Fed. Cl. at 303 (applying good faith/reasonable basis test to interim fee request).

---

[7] Determining whether a petition was filed in good faith is a subjective inquiry, and can be established as long as the petitioner demonstrates an honest belief that she suffered a compensable vaccine injury. *See Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). This element is therefore the more easily established of the two. *Austin v. Sec'y of Health & Human Servs.*, No. 10-362V, 2013 WL 659574, at *7 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("[d]ue to its subjective nature, the standard for good faith is very low"). Indeed, some cases stand for the proposition that absent an affirmative showing that a petitioner acted in bad faith, a petitioner is entitled to a presumption of good faith. *See, e.g.*, *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996).

[8] The reasonable basis requirement involves an objective inquiry with no such favorable presumption as with determining good faith. *See McKellar*, 101 Fed. Cl. at 303-34 (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375 (Fed. Cir. 1994)) ("[t]he petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs"). An assessment of reasonable basis "look[s] not at the likelihood of success but more to the feasibility of the claim." *Di Roma*, 1993 WL 496981, at *1.

## II. Respondent's Challenge to Interim Fee Award Request.

Respondent raises three objections to Petitioner's application for interim fees: 1) interim fees are inappropriate at this juncture of the matter; 2) Petitioner's requested hourly rate for her counsel is unreasonable; and 3) the hours expended by Petitioner's counsel are unreasonable. I will address each of these issues in turn.

### A. General Propriety of Interim Award in this Case.

Respondent contests that Petitioner's interim fees application is inappropriate because 1) interim fees are not statutorily authorized as per Section 15(e)(1) of the Vaccine Act; and 2) to the extent special masters are in fact so authorized, then they may only act in limited circumstances, such as where a petitioner makes a particularized showing of hardship.

Respondent's first objection to an interim fees award is frequently made in Vaccine Program cases,[9] and is even more readily dispensed with.[10] As discussed above, the Federal Circuit has clearly established that special masters have the authority to award interim fees. And it is very much the case that special masters (including myself) have granted interim fees awards despite the fact that a case was unresolved, and at different stages of a case's life as well. *See, e.g.*, *Fairchild v. Sec'y of Health & Human Servs.*, No. 13-487V, 2015 WL 4550161 (Fed. Cl. Spec. Mstr. Mar. 3, 2015); *Crutchfield v. Sec'y of Health & Human Servs.*, No. 09-39V, 2011 WL 3806351 (Fed. Cl. Spec. Mstr. Aug. 4, 2011); *Cedillo v. Sec'y of Health and Human Servs.*, No. 98-916V, 2009 WL 1726228 (Fed. Cl. Spec. Mstr. May 21, 2009).

Respondent next asserts that even if special masters do have the authority to award interim fees, there is no presumption of entitlement to such an award, which is only appropriate upon a "special showing of hardship" that Ms. Al-Uffi has not successfully made. Opp. at 5-6 (citing *McKellar*, 101 Fed. Cl. at 300-01). Petitioner responds by arguing that in fact she has made such a special showing by meeting all of the *Avera* criteria: 1) protracted proceedings; 2) costly expert testimony; and 3) undue hardship. Mot. at 12; *Avera*, 515 F.3d at 1352.

---

[9] *See, e.g.*, *Thomas v. Sec'y of Health & Human Servs.*, No. 12-309, 2013 WL 5718948, at *1 (Fed. Cl. Spec. Mstr. Sept. 26, 2013); *Whitener v. Sec'y of Health & Human Servs.*, No. 06-477, 2011 WL 1467919 (Fed. Cl. Spec. Mstr. Mar. 25, 2011).

[10] Petitioner specifically requests that I sanction Respondent under Rule 11 for repeatedly asserting this argument. Mot. at 8. I will not do so, however, despite the fact that Respondent's argument is frequently disputed or disregarded by special masters, because it appears Respondent disputes the broader application of *Avera* and mainly wishes to preserve its objections should she ever choose to appeal a particular interim fees decision on this basis.

A threshold matter to resolve is whether all three of these *Avera* factors must in fact be satisfied, or if the test balances the factors in order to determine the propriety of an interim award overall, in a special master's discretion. Respondent maintains that the *Avera* criteria are "necessary circumstances." Opp. at 8. But other special masters have not found the *Avera* criteria to be exhaustive. *See, e.g.*, *Hiland v. Sec'y of Health & Human Servs.*, No. 10-491V, 2012 WL 542683, at *5 (Fed. Cl. Spec. Mstr. Jan. 31, 2012). The enumerated *Avera* criteria are certainly not conjunctive in nature. Rather, meeting only one of *Avera*'s criteria (or establishing some other rationale) can be sufficient to justify an interim fees award, because the three criteria are "factors that should be considered and weighed when evaluating a request for attorneys' fees before judgment." *Dudash v. Sec'y of Health & Human Servs.*, No. 09-646V, 2011 WL 1598836, at *4 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). And Respondent acknowledges that I possess the discretion to make an interim award (Opp. at 6) – further underscoring that these criteria need not be applied in equal or successive fashion. Thus, while I will consider in my analysis all such criteria herein, I do not conclude that they must all be satisfied to justify an interim award. The better approach is to apply them flexibly to the circumstances before me.

Petitioner first argues that this matter is protracted because it has been pending for over eighteen months. Mot. at 12. She claims that this is sufficient to meet this *Avera* criterion, given that other special masters have found that cases less than a year old fit the definition of protracted. *Id.* at 12-13 (citing *Bear*, 2013 WL 691963, and *Becker v. Sec'y of Health & Human Servs.*, No. 13-687V, 2014 WL 4923160 (Fed. Cl. Spec. Mstr. Sept. 11, 2014). However, in the majority of cases the "protracted proceedings" element is only satisfied where several years have passed, or where a case's trajectory is anticipated to take several more years prior to resolution. *See, e.g.*, *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 2284989, at *4 (Fed. Cl. Spec. Mstr. Apr. 30, 2013) (granting interim fees when proceedings had been ongoing for over five years); *Wright v. Sec'y of Health & Human Servs.*, No. 10-222V, 2013 WL 1800373, at *3 (Fed. Cl. Spec. Mstr. Apr. 4, 2013) (finding that three years pre-entitlement hearing justified interim fees); *Jakes v. Sec'y of Health & Human Servs.*, No. 06-831V, 2013 WL 1150518, at *4 (Fed. Cl. Spec. Mstr. Feb. 19, 2013) (awarding Mr. Downing interim fees because the case had been ongoing for over six years).

I cannot find that this matter is protracted given its procedural history. Even though Ms. Al-Uffi's petition may be approaching its second anniversary, it is common for Vaccine Program cases that do not settle quickly to last twice as long. And although the parties have acted with admirable speed in obtaining and filing expert reports, it is also clearly the case that a third of the proceeding's history was devoted to records-gathering (and that little attorney time is reflected by that process, which indicates that the collection of documents was not notably onerous).

Regarding the costliness of expert testimony, Petitioner raises the fact that her counsel has had to reimburse expert costs exceeding $10,000. Mot. at 33. But the real question is whether such amounts are properly considered "excessive," as Respondent points out. There is no clear authority

for what standard would apply under such circumstances. *Avila ex re. Avila v. Sec'y of Health & Human Servs.*, 90 Fed. Cl. 590, 598 (Dec. 22, 2009) (citing *Avera*, 515 F.3d at 1352); *but see Fester v. Sec'y of Health and Human Servs.,* No. 10-243V, 2013 WL 5367670, at *15 (Fed. Cl. Spec. Mstr. Aug. 27, 2013) (determining that "[i]t makes considerable practical sense" to evaluate whether expert costs are high based on objective criteria).

Here, I do not find that the particular expert costs at issue are notably high from an objective standpoint: $10,075 is not an insignificant amount, but it is not a shocking price for the services of two experts together. However, the fact that these experts have been paid out of counsel's own pocket does bear slightly in favor of the present request – especially given counsel's diligence and efficiency in obtaining these experts in the case's early stages. In a case where counsel has acted expeditiously with regard to expert retention (thereby increasing the likelihood of a more swift resolution of the matter overall), he should not be penalized.

Finally, Petitioner and Respondent disagree whether the undue hardship criterion solely includes hardship to the Petitioner (Respondent's position), or whether it should consider hardship to both Petitioner and Petitioner's counsel (Petitioner's position).[11] Mot. at 14-17; Opp. at 9. Other special masters have rejected the idea that only hardship to the petitioner is relevant. *See, e.g.*, *Becker*, 2014 WL 4923160, at *4; *Calise v. Sec'y of Health & Human Servs.*, No. 08-865V, 2011 WL 2444810, at *2-3 (Fed. Cl. Spec. Mstr. June 13, 2011); *Kirk*, 2009 WL 775396, at *2 ("[t]he guidance offered by the Circuit in *Avera* was slim, but the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners *and their counsel*" in order to ensure that availability of a competent bar) (emphasis added). I similarly find that counsel's burdens in litigating a case can be a relevant factor in evaluating hardship, since considering such burdens is consistent with one of the underlying purposes of permitting interim fees in the first place.

Here, Petitioner offers the example of the litigation costs her counsel is presently incurring in four pending Vaccine Program cases (including the present). *See* Reply at 7. Whether or not such costs are directly compensable here or in other Vaccine Program cases on an interim basis, their existence does illustrate the economic challenges that an active Vaccine Program practitioner faces in representing multiple Vaccine Program claimants. And in fact Mr. Downing's burdens may well be greater, given the number of cases in which he is appearing at present in the Program.

In opposing the present application, Respondent cites to instances where I or other special masters have denied interim fees applications. Opp. at 6-8; *See, e.g., Lamare v. Sec'y of Health & Human Servs.*, No. 12-312V (Fed. Cl. Spec. Mstr. Feb. 27, 2015) (unpublished decision) (deferring ruling on an interim fees application due to not meeting the *Avera* criteria). In *Lamare*, I determined that an award of interim fees was not justified, mainly because Petitioner had contributed to delay in the case by repeatedly filing motions for continuances, and because the matter was not especially protracted. *Id.*

---

[11] Petitioner particularly invokes the potential chilling effect if Vaccine Program counsel are not assured of prompt compensation, especially for more experienced attorneys that frequently practice in the Vaccine Program. Mot. at 15.

11

Here, although I do not find that the present proceedings are particularly protracted, I also do not find that Petitioner or her counsel have appreciably delayed this matter. To the extent counsel failed to act expeditiously in meeting orders to complete the filing of medical records in the spring and early summer of 2014, the billing evidence establishes that very little attorney time was expended in that period. Moreover, the process of filing medical records was ultimately completed six months from the case's initiation – not an unreasonable amount of time for a Vaccine Program case, since records gathering can last a year or even more. Thus, such delay did not concretely multiply attorney costs, and therefore I do not find that it undermines Petitioner's argument that an interim fees award is appropriate.

There are no other generalized bases for denial of an interim fees award in this case. Respondent does not meaningfully contest Petitioner's good faith or reasonable basis in bringing this petition. Opp. at 8, n. 5.[12] And I am not persuaded by Respondent's argument that interim fees applications should only be granted in rare, exceptional instances. As previously discussed *Avera* provides special masters with "broad discretion" in determining whether to make an interim award. *See, e.g.*, *Kirk*, 2009 WL 775396, at *1. In the exercise of that discretion, I find an interim fees award[13] is appropriate in this particular case.

### B. Challenges to the Amounts Requested for Petitioner's Attorneys

1. *Petitioner's Attorney's Hourly Rate.*

a. <u>Legal Standard for Determining Reasonable Hourly Rate</u> – I must now evaluate what the magnitude of Petitioner's interim attorney's fee award should be. Whether a fee award is made on an interim basis or after a case's conclusion, the requested sum must be "reasonable." Section 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters may in their discretion reduce attorney hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

---

[12] Respondent does indirectly attack reasonable basis, stating that the two filed expert reports are "weak." Opp. at 8, n. 5. But for purposes of the present application, Respondent concedes that sufficient reasonable basis is established to make an interim award appropriate. I separately conclude herein that there is sufficient support for Petitioner's claim to find reasonable basis for the claim's filing – based on the evidence of Petitioner's vaccination, onset, and injury supported by the medical record, including R.B.'s pediatric neurologist treater. Special Masters have historically accorded deference to treaters' opinions. *See, e.g.*, *Andreu v. Sec'y of Health & Human Servs.*, No. 98-817V, 2008 WL 2517179, at *8 (Fed. Cl. Spec. Mstr. May 29, 2008).

[13] I do not, however (for the reasons stated below), find that the present interim award should also include expert costs incurred to date.

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id*. at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, D.C. for Vaccine Program cases). *Avera*, 515 F.3d at 1348. After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella,* 86 Fed. Cl. at 205-06. This reasonableness inquiry involves consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

In some cases, determining the proper hourly rate for a particular attorney requires consideration of whether there is a significant disparity between the forum rate applicable to the Vaccine Program generally and the geographic forum in which the attorney practices, in order to adjust the rate is used for the lodestar calculation. *Avera,* 515 F.3d at 1349*,* (citing *Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). Here, however, the parties do not dispute that the forum rate and the rate prevailing among Arizona attorneys (the geographic locale from which Mr. Downing practices) is substantially equivalent, obviating the need for such rate comparison. *See* Opp. at 18.

b. Petitioner's Attorneys' Hourly Rates – Respondent maintains that Mr. Downing's requested rate of $350/hour is unreasonable, suggesting instead a rate of $290/hour, $295/hour and $296/hour for 2013, 2014, and 2015 respectively. *Id*.[14] I recently determined in another matter that the current reference range for the forum rate (taking into account the Consumer Price Index ("CPI") inflation calculator) is $272.66 to $409.49. *See generally Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559, at *6 (Fed. Cl. Spec. Mstr. May 15, 2015). This range is consistent with that arrived at by special masters in other cases. *See, e.g., Tieu Binh Le v. Sec'y of Health & Human Servs.,* No. 07-895V, 2014 WL 4177331, at *13 (Fed. Cl. Spec. Mstr. July 31, 2014) (range for "experienced attorneys" is $275

---

[14] As noted above, Respondent does not contest the reasonableness of Mr. Redman's requested rate of $195 per hour. I do not separately find that particular rate is unreasonable for an attorney with his level of experience, based on the rate ranges discussed herein.

to $413 per hour); *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *12 (Fed. Cl. Spec. Mstr. May 14, 2014) (applying range of $275 to $414 per hour for attorney with ten years of experience). The average based on that range is $341.08/hour – fairly close to the $350/hour rate requested by Petitioner.

As the exhibits to Ms. Al-Uffi's fee petition establish, Mr. Downing has 20 years of litigation experience, which includes 12 years of Vaccine Program experience, and represents petitioners in numerous pending cases.[15] The $350/hour requested rate for his services is not only well within the range for an experienced attorney, but is corroborated by the fee decisions of other special masters awarding comparable rates to similarly-situated attorneys. For example, Elaine Sharpe, a Vaccine Program attorney who has been practicing for 19 years (10 of which were in the Vaccine Program) was awarded $370 in *Yang v. Sec'y of Health & Human Servs*. No. 10-33V, 2013 WL 4875120 (Fed. Cl. Spec. Mstr. Aug. 22, 2013). In terms of experience, Mr. Downing and Ms. Sharpe are extremely comparable (with Mr. Downing being arguably a bit more experienced). Other similarly-situated Vaccine Program attorneys are also routinely awarded slightly more than the requested $350/hour. Lisa Roquemore, an attorney based in Irvine, California with 27 years of experience (17 of which are in the Vaccine Program) routinely receives between $355 and $365/hour. *See, e.g.*, *Guerrero v. Sec'y of Health & Human Servs.*, 120 Fed. Cl. 474, 484-85 (2015); *Brown v. Sec'y of Health & Human Servs.*, No. 09-426V, 2013 WL 2350541 (Fed. Cl. Spec. Mstr. May 6, 2013).

As a result of the foregoing, I find that $350/hour is a reasonable hourly rate for Mr. Downing.[16] The appropriate rate for work he performed this year, however, cannot be applied retroactively to work done in previous years, as doing so would effectively be the equivalent of charging the government interest. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011). As a result, employing the CPI

---

[15] I am not persuaded by Respondent's argument that Mr. Downing's failure to obtain partner or of counsel status suggests that he deserves a lower rate. Opp. at 15-16; Ex. 2 to Opp. (ECF No. 45). Designations such as partner or of counsel are not used consistently by different law firms; the fact that one practitioner obtains such a title does not mean that he or she is necessarily more experienced or qualified than a non-partner attorney with comparable experience and years of practice.

[16] The requested rate for Mr. Downing is also consistent with a more recent fees decision, *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293, ECF No. 148 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *reconsid. den'd*, ECF No. 151 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). In *McCulloch*, Special Master Gowen extensively considered appropriate hourly rates for Vaccine Program attorneys, based on (i) the prevailing rate for comparable legal work within the forum of Washington, D.C.; (ii) the prevailing rate for cases in the Vaccine Program; (iii) the experience of the attorney both generally and within the Vaccine Program more specifically; (iv) the quality of their work; and (v) their reputation int eh legal community and the community at large. *McCulloch*, ECF No. 148 at 23. Special Master Gowen ultimately concluded that "the range of $350 to $425 an hour for attorneys with more than 20 years of experience is a reasonable forum rate." *Id*. at 26. "Similarly . . . lawyers with 11 to 19 years of experience may reasonably charge $300 to $375 an hour, with higher rates to be paid to those with significant vaccine experience who perform quality work in these cases." *Id*. Mr. Downing's requested rate of $350/hour places him squarely within the range deemed reasonable by Special Master Gowen in *McCulloch*.

Calculator, Mr. Downing's rate of $350/hour is hereby adjusted to $348/hour for work performed in 2014 and $342/hour for work performed in 2013. This results in an attorney's fee award of $30,432.20 in total ($8,686.80 for 25.4 hours in 2013; $10,370.40 for 29.8 hours in 2014; and $11,375.00 for 32.5 hours in 2015).

        2.     *Hours Expended by Petitioner's Attorney.*

        a. <u>Legal Standard for Determining Reasonable Hours Expended</u> - Determining a reasonable sum for a fees award in Vaccine Program cases involves more than the mere performance of a mathematical calculation once an appropriate hourly rate is established. I must also determine if the fee applicant has established the reasonableness of the work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[17] Quoting a decision by the United States Supreme Court, the Federal Circuit has characterized the contours of a reasonable fees request:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (quoting *Hensley*, 461 U.S. at 433-34).

The special master is not obligated to evaluate an attorney's billing records on a line-by-line basis in deciding a fee petition. *Saxton*, 3 F.3d at 1521-22 (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen*, 102 Fed. Cl. 719 at 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

---

[17] Although *Mares* did not interpret the Vaccine Act's fees provisions, fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

b. <u>Hours Expended by Petitioner's Attorneys</u> - Respondent offers two objections to the reasonableness of hours expended by Petitioner's counsel: (i) a general objection that counsel acted inefficiently; and (ii) a specific objection that the majority of the time billed by Mr. Redman was duplicative of time billed by Mr. Downing. Opp. at 18-20.

Regarding Respondent's first objection, I reiterate that I need not "pan for gold" in Mr. Downing's attorney invoices in search of evidence of inefficiency to determine how much of his requested time should be compensated. *Saxton*, 3 F.3d at 1521-22. Respondent for her part has not identified any specific inefficiencies for me. Despite this, however, I have reviewed Mr. Downing's billing record to look for examples of inefficient work.

Overall, I see only one instance of inefficiency that might warrant reduction. The procedural history does reflect dilatory conduct (and even the ignoring of my orders) in completing the filing of medical records in this case, particularly between April and June of 2014. Opp. at 1, n.1. However in that three-month period, Mr. Downing only billed a total of 1.4 hours ($490). Mot. at 68. Moreover, any delay in completion of such filing was more than made up for in Petitioner's subsequent prompt filing of expert evidence. Accordingly, because such delay did not significantly protract this matter or add to the attorney costs incurred to date, I do not find that it is a basis for reduction in the overall fee request.

Respondent's second global objection is better substantiated. She asserts that Mr. Redman duplicated tasks already performed by Mr. Downing. Opp. at 19. Thus, she questions why Mr. Redman billed (i) 2.5 hours ($487.50) to review medical records already reviewed by Mr. Downing; (ii) 5.6 hours ($1,092.00) to review Respondent's Rule 4(c) Report and expert report and draft a memo in response; (iii) 3.9 ($760.50) to review the same records he has previously reviewed in determining if the record is complete; (iv) .8 hours ($156.00) to review Dr. Axelrod's supplemental report which was already reviewed by Mr. Downing; and (v) 1.2 hours ($234.00)[18] to examine case history and draft a subpoena (a task for which Respondent says Mr. Downing also billed 1.1 hours). *Id*. at 19-20. Respondent requests that the costs incurred in performing such tasks be deducted (a total of $2,730.00) from Petitioner's application. Petitioner does not address the purportedly duplicative nature of such work in her Reply.

Other special masters have noted that inefficiency can result from multiple attorneys working on the same case, *See, e.g.*, *Turkupolis v. Sec'y of Health & Human Servs.*, No. 10-351V, 2015 WL 393343, at *4 (Fed. Cl. Spec. Mstr. Jan. 9, 2015). But the opposite is also conceivable – staffing a case with additional attorneys can ensure that the overall quality of work performed is even better, since they can backstop each other or critique mistaken assumptions, thereby reducing the chance that counsel will err in analysis of significant matters. *See, e.g., Barrett*, 2014 WL

---

[18] Respondent incorrectly cites this as 1.3 hours in her Opposition.

2505689, at *8 (multiple attorneys working the same case can "efficiently and productively" work together, "applying their skills and performing their duties in a complementary, non-duplicative manner"). In evaluating if multiple attorneys have unnecessarily duplicated effort or worked in a coordinated manner, the important question is "whether having [multiple] attorneys is unreasonable." *Davis v. Sec'y of Health & Human Servs.*, No. 07-451V, 2012 WL 4748079, at *2 (Fed. Cl. Spec. Mstr. Sept. 6, 2012) (emphasis added).

Applying the above analytic standard, I reach the following conclusions with respect to Respondent's identified instances of purportedly duplicative inefficiencies:

(i) Respondent's first objection is that there was no need for Mr. Redman to bill for reviewing medical records already reviewed by Mr. Downing and paralegals. Opp. at 19. As Petitioner has not provided a reason why this is necessary given Mr. Downing's familiarity with the case and lead role in representing Ms. Al-Uffi, **I hereby reduce the requested fees by $487.50.**

(ii) Respondent next objects to Mr. Redman's review of Respondent's Rule 4(c) Report and expert report, given that Mr. Downing had already billed for his review of the same documents. *Id*. Respondent filed these materials on December 12, 2014. ECF Nos. 24, 25, 26. Mr. Redman engaged in his analysis on December 16, 2014. Despite Respondent's objection, it does not appear that Mr. Downing himself spent a significant amount of time reviewing these documents (absent his general review of documentation prior to a status conference on January 8, 2015 (Mot. at 39)) prior to consultation with his own expert about a reply on January 19, 2015. *Id*. at 40. He may have reasonably relied on the interpretation of these documents by Mr. Redman. Moreover, it would be reasonable for cases staffed by more than one attorney to attempt to gain familiarity with their adversary's arguments by reading the same documents, instead of relying upon a single attorney to read the document and then relate his understanding to his colleagues. Indeed, doing so ensures that the parties have the most complete understanding of the pleading or document at issue. **I hereby grant the $1,092.00 requested.**

(iii) Respondent objects to the $760.50 billed by Mr. Redman on January 12, 2015, "to review the same records he had previously reviewed." Opp. at 20. Respondent neglects to note, however, that additional medical records had been filed in the intervening time period between Mr. Redman's last review and the review performed on January 12, 2015. Indeed, because his billing task simply states "[r]eview and analyze **all** medical records," I cannot conclude that the work performed was necessarily duplicative. Mot. at 44 (emphasis added). **I hereby grant the $760.50 requested.**

(iv) Respondent also objects to the .8 hours ($156.00) billed by Mr. Redman for reviewing Dr. Axelrod's supplemental report, which Respondent asserts had already been reviewed by Mr. Downing. It is evident from the billing record that from January to the beginning of February of 2015, Mr. Downing spent an extensive amount of time coordinating with Dr. Axelrod in the preparation of his expert report. Mot. at 40. It is unclear what value was added with Mr. Redman's review and analysis of the same report, but the parallel review of a significant piece of evidence like an expert report is to be expected in a case staffed by multiple attorneys, as noted above, and may in fact aid the overall representation. As such, **I grant the $156.00 requested.**

(v) Respondent's final objection focuses on the 1.2 hours ($234.00) billed by Mr. Redman "to 'determine the history of medical record requests' sent to two providers and draft a subpoena." Opp. at 20 (citing Mot. at 10). However, the billing record tells a slightly different story. It indicates that Mr. Redman did review the procedural history, but also appears to have drafted the shell for the Motion for Authorization to Issue Subpoenas. Mot. at 45. Mr. Downing, by contrast, drafted the actual subpoenas themselves, later corresponding with the process server to ensure service. *Id*. at 41. Mr. Redman then drafted a letter explaining that one of the entities was in contempt of the subpoena. *Id*. at 45. The relatively small amounts of time billed, and how they are specifically described, suggest coordinated, rather than duplicative, work performed. As such, **I hereby grant the $234.00 requested.**

Based on the above, I reduce Mr. Redman's fees by $**487.50.**

### III. Challenges to Requested Expert Costs.

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). Such costs include expert time incurred while working on a case. *Fester*, 2013 WL 5367670, at *16. When petitioners fail to carry their burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Vaccine Program petitioners do receive interim awards for incurred expert costs. Such awards are most commonly granted to reimburse such costs *following* the expert's testimony at an entitlement hearing. *See, e.g.,* Roberts, 2013 WL 2284989 (granting interim award of expert costs after conclusion of hearing but before issuance of entitlement decision); *Dobrydnev v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 134, 148 (2010) (error for special master to deny interim fees request to cover incurred expert costs; expert had testified at hearing and needed to be compensated for prior work before he would be willing to testify at subsequent rebuttal proceeding); *see also*

*Crutchfield*, 2011 WL 3806351, at *8 (granting interim award of expert costs after experts' testimony at an evidentiary hearing; although petitioner had paid cost of expert's report preparation, it was an undue hardship to require petitioner also to cover costs incurred after expert testified at trial). However, there are also instances in which petitioners have obtained an interim award of expert costs before the expert testified. *See, e.g., DiMatteo v. Sec'y of Health & Human Servs.*, No. 10-566V, 2014 WL 1509320 (Fed. Cl. Spec. Mstr. Mar. 27, 2014).

Ms. Al-Uffi asks for an interim award of expert costs incurred and paid prior to hearing (which has yet to be scheduled). As discussed above, one of the *Avera* criteria for an award of interim fees is whether a matter requires the services of "costly experts." *Avera*, 515 F.3d at 1352. That question is best resolved by addressing the cost issue from an objective standpoint. *Fester*, 2013 WL 5367670, at *15 ("[a] petitioner or petitioner's counsel who has expended $100,000 in expert costs in a case that may be on review or appeal for several more years certainly presents a more compelling case for an interim award than one who has only a $1,000 expert retainer cost outstanding"). Otherwise, "[t]o look at such cases subjectively would require delving into a law firm's or expert's financial situation, a requirement that would likely be repellant to the court and law firm alike." *Id.*

Petitioner's motion does not adequately substantiate why an interim award of expert costs is appropriate or necessary. As noted above, the matter has not been protracted, nor are the retention costs for Drs. Axelrod and Siegler particularly high in comparison to the costs that other Vaccine Program experts have generated. *See, e.g., Faoro v. Sec'y of Health & Human Servs.*, No. 10-704V, 2014 WL 5654330 (Fed. Cl. Spec. Mstr. Oct. 15, 2014) (interim award of $23,130 in expert costs). Petitioner has also not established that her ability to prosecute this case will be otherwise harmed if reimbursement of such costs is not made pre-hearing (for example, by demonstrating that the experts would not be willing to testify at hearing unless she was reimbursed for the payment of such costs).

Certainly there is some burden imposed on Petitioner, Petitioner's counsel, and/or his law firm in having to carry the approximately $10,000 in expert costs incurred (and paid) to date. But the existing motion does not substantiate what the nature of that burden is, and/or why it merits an interim award. And I concur with the special master's observation in *Fester* that delving further into the particular financial status or needs of present counsel within his law firm, in order to ascertain whether that burden is substantial enough, requires a subjective and speculative inquiry that goes well beyond what is appropriately the scope of an interim fees request. (I also note that the concurrent interim award of attorney's fees I am granting might be used in part to ameliorate such costs, thereby, if indirectly, easing any burden on counsel).

Given the above, I do not find that an interim award of expert costs is appropriate at this time. After the hearing, however (at which time Petitioner's experts will have carried out their

ultimate purpose by testifying), Petitioner may renew the present request, supplementing it with statements or invoices recording additional expert costs whether paid or merely incurred.[19] I defer resolution of this aspect of Petitioner's motion until then.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Downing's Fees | $30,695.00 | $262.80 | $30,432.20 |
| Mr. Redman's Fees | $2,730.00 | $487.50 | $2,242.50 |
| Expert Costs | $10,075.00 | N/A | N/A |
| Other Costs | $5,398.50 | none | $5,398.50[20] |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fees awards, and based on the foregoing, I **GRANT IN PART** Petitioner's Motion for Interim Attorney's Fees, awarding **$38,073.20** in interim fees and costs. I **DEFER** consideration of expert costs until a later time. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[21]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[19] Alternatively, should this case become more protracted, or should the facts change such that the case for an interim award of expert costs is more compelling, Petitioner could renew this portion of her request sooner. And I urge the parties to consider stipulating to the payment of such costs upon conclusion of the hearing.

[20] As noted above, Respondent has not objected to these costs, and because I find them reasonable I hereby include them in the award without adjustment.

[21] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.